All rise. Please be seated. The, uh, excuse me. The next case file for oral argument is made in re the Marriage of Rouse. Counsel, whenever you're ready, may proceed. We're going to have to get Mr. Blood a chair, uh, a room here, Your Honor. He was here yesterday. Thank you, Your Honor. And tomorrow will be fine.  May it please the Court. For the audio record, I am Curtis Blood, and my client is Rachel Recker, formerly known as Rachel Recker Rouse. We're here today on an appeal from the St. Clair County Circuit Court from a judgment of dissolution of marriage. We ask this Court to find that the property disposition, marriage of property disposition, was an abuse of discretion. We ask this Court to reverse and remand on the property disposition. This marriage, uh, as the appellee's brief states, was essentially equal in assets and debts, except for a couple of things. Number one was the marital residence, which the Circuit Court order sold, and the app, the net divided equally between the partners. The other asset of this marriage was the husband's pension. He had a federal military pension, which the Circuit Court awarded entirely, 100%, to the husband. By the time the trial occurred, he was about a month from actually collecting that pension. And by the time post-trial motions were heard, the post-trial motions were heard. He was collected. Mr. Bullett, I was somewhat surprised, though, that your client did not have any kind of actuarial presentation of the value of her, of her pension. Well, Your Honor, it would have. If you're talking about an offset, how is the Court to arrive at that without knowing what hers is? Well, there are cases that I've read and I've cited in brief, although I'm sorry that the names don't come to me right now. That's okay. We'll find them. Even in cases where there is an actuarial assessment, it depends on so many ifs and so many. But it's almost like you're arguing why bother doing it, you know, if there are these balls up in the air, which is often the case. But how do you offset his, which you say was almost imminent, when you don't know what hers is? I mean, we all, I think we can take judicial notice that the state and the county give these, I don't know, monthly or yearly or every six months or something, estimates of what retirement would be if they continue working and what they vested in and that type of thing. And she did not present that either, correct? Correct. On what basis, though? Well, it depends. Well, the statute, which we've now quoted in our reply brief, Section 7-142 of the pension code, says that you've got to know her age of retirement, the employees age of retirement, the years of service, and what the final pay is. Without that, you can't know what the pension is. And if you don't know what the pension is, you can't calculate the value. But isn't it done all the time, where they take a present cash value of what is vested and project it out? No? Well, it is done. But there are cases saying that even when that is done, it depends on so many variables that the court should apply the reserve to jurisdiction approach. Even where there is an actuarial appraisal. Does that conflict with the implicit or explicit at times policy behind our Marriage and Dissolution of Marriage Act of basically getting the parties separate, standing on their own two feet, where the connection, the state-suggested connection should be only if they have children that they have to cooperate about raising and supporting. Basically, what you're saying is that it was an abuse of discretion not to take the reserve jurisdiction approach. But that means this could go on for an indeterminate and unspecified period of time without any ultimate resolution or any ability to anticipate what one's financial future is going to be. Especially if you're in one of these state or county employment situations where they can always say you're going to get X amount if you retire at a certain date. But you're intending to go way past that date. And so you really don't know what's going to happen. Well, there are competing policy considerations. I agree with that. But as you pointed out, in the child situation, there are two. And we deal with them. Now, in this situation, what the court is reserving is jurisdiction to enforce when my client actually has a pension. But until then, there's nothing to do. There's just a one-time back to court to get that done. That should be it. What happens while Mr. Rouse is receiving his pension then? But when the court looked at it, he wasn't receiving it yet. Okay, now he's receiving it. Yes. So is he entitled to 100% of that, even under the reserve jurisdiction approach? Well, he's entitled to whatever portion of the trial court award. And that's, I think, the point is how does the trial court award your client a portion without knowing what all the offsets are going to be? Right, right. Or at least have some indication. I mean, I recognize and I think the court has noted we can take judicial notice of IMRF. I mean, it depends on how many years you're going to be there, what your salary is, time you depart, age of retirement. And, of course, your client could be fired tomorrow. Exactly. But if Mr. Rouse now begins collecting his, that pension is now known. Yes. So how does the court award your client her portion? How is the court supposed to do that? Well, since we don't know what her pension will be or when she'll collect it, the percentage approach makes sense. By 50-50? But what percentage? Percentage. Well, let's say, well, 50-50 has a certain appeal to it. Well, then you'd have to know 50% of what? Well, but if it's 50-50, not necessarily. Okay, so you're saying 50% of his and 50% of hers. Right, if and when she gets it. But I want to emphasize, my client has no pension. No, but actuarials always deal with assumptions and risks and, I mean, even life expectancies that are put into evidence in cases all the time have a lot of assumptions that are their basis. The worst case scenario is my client will never have a pension. No, but she did know what her pension entitlement was on the day of trial, and she was supposed to disclose that and said she didn't and said she had no idea. Didn't bring a statement in, correct? Well, she had a form that she filled out, I thought. I believe, wasn't she supposed to produce a statement? Right. Well, that's a funny thing. His discovery request isn't in the record. He didn't move to compel. Okay. We're kind of back and forth on you, Mr. Baud, but at least in my review of the record or the briefs, it says the current value form submitted by Rachel indicated $26,952.23 for Rachel's IMRF. Was that the estimated value of her pension? What was that? All I know is that. You don't know what it means? I do not. It's just that. Were you the attorney of record in the? I was not a trial attorney, Your Honor. I only worked in the appellate court. Well, will the record of the hearing, do you know if that hearing date was? Have you read the record? It was more than once, most recently this week. So you don't know what that number meant? No. So is your argument that once Mr. Rouse begins collecting his pension, the court should award a 50-50 distribution, and then when Rachel gets her pension, if ever, a 50-50 distribution would be fair? Yes. Under those circumstances? Yes. That's your basic position? It is. And think about, wouldn't you have to know how much she was going to get to make a reasonable decision that's not 50-50? I think that's what Justice Chapman is asking you about as to why an actuary or economist or somebody wasn't produced to make assumptions. And it appeared from the briefing that the court was pretty critical of Rachel for not coming in with something. Maybe even overly harsh, but regardless, it was mentioned many times. It was. I mean, it's just a trial and post-trial motion, but still. And there's no wrong motion to compel. It was, I suspect, and I'm speculating here because it's not in the record, but there was just a standard discovery request for all retirement information. And this form, whatever it was, that we get in the mail, was not produced. But the statute tells us it wouldn't tell us anything because we do know that she has no pension. And, again, the court was going to be critical. I still have a pension, but she has no pension. Is there anything indicated in the record? I mean, the statements generally tell you what the value is of what you've deposited and what is available if you were to pass away, and that amount would go to your heirs. Is there any indication as to what the monthly distribution by pension would be if your client were to retire in the next month or so, assuming that she invested, you know, at whatever percentage level? Is there any indication in the form as to – there should be an indication in the form as to what her monthly receipt would be. But that wasn't produced. Well, the short answer is that wasn't produced. Okay. I think the better answer is under Section 7-142 of the code, the pension code, if she was to retire a month, she would receive nothing because under the statute, she's not entitled to anything. So she would have been entitled at age 55, and she was 52. Is that correct? Do I remember that correctly? It's fairly recent, so she's still not 55. She still has no pension. And, again, of course, even if she had vested rights to reach 55, she still hasn't retired and has not – her testimony was she doesn't intend to at any particular time, as most people in their early 50s don't. So – I'm sorry? The standard here is abuse of discretion, correct? Correct. And the immediate offset type of allotment, you would agree, is more favored by the courts? Is that correct? Would you agree with that? Yes. And is there any – well, you do have the one case that you cite, the Korpor case? Colonel Korpor, Sky Air Force base. Okay. But there really doesn't seem to be many cases out there that require one or the other, and especially the reserved approach. Would you agree with that, or – No, my research indicates just the opposite. Just the opposite? The Korpor case is one that this court – I'm aware of that. Reversed. Right. Reversed the same third county circuit court, the same circuit court. Okay. And we found some cases, and we put them in our brief. No, the favored approach is the reserved jurisdiction approach, and the one court – and I don't have the name, but it's in our brief – says that the immediate offset approach is more talked about than used. In re marriage of Smith. Thank you. In re marriage of Smith. Mr. Blumenthal, the reserved jurisdiction approach is different than what we would normally think about of continuing – what I'm going to call continuing jurisdiction. Would you agree with that or not? I mean, Justice Goldenherz is worried about, as we all are, leaving these matters pending for years and years. Rachel is only 55, maybe another 10 years before she retires. Maybe 50. Right. And at some point, courts like to have a cutoff, and with children, 18, you know, unless there's college. But the reserved jurisdiction approach, as I understand it, seems to be different than this continuing jurisdiction all the time. In other words, there is some kind of allocation made under – and correct me if I'm wrong, because I'm having a little trouble grasping this. The retained jurisdiction is really only related to the pension issue. Is that right? I think that's correct. I don't see anything else. But an allocation is made at the time of the divorce that we're going to use this method. For enforcement. Right. Or maybe not even using the words, but splitting the pension up by proportion or by percentage. Well, there would have to be some language to indicate that there's – now I'm going to call it continuing jurisdiction over the court, as opposed to a final property settlement. Because if we use reserved jurisdiction, we don't have a final property settlement, do we, or do we? Well, we do final for purposes of appeal, and there was a case that discussed that. But in every case, in every single case where the trial court divides property, it retains jurisdiction to enforce that judgment, whether it says it retains it or not. Right. And that's what we've got here. Okay. But then you haven't made a judgment yet. You haven't. Under the reserved jurisdiction approach, you haven't made a judgment because you have not determined – you don't have at hand all the factors to determine what percentage of distribution of a vested pension interest should be distributed to the various parties. Therefore, you have not made a judgment yet. You reserve jurisdiction to make a judgment, as opposed to continuing jurisdiction to enforce a judgment the court has already made. So doesn't that – isn't that a substantial and qualitative difference between the two and makes rational the idea of, in the court's discretion, using the offset approach? Your Honor, I did consider that, and I read the cases thinking about that, among other things. And my reading is that if this court agrees with us and reverses and remands, that then the circuit court is going to have to do the percentage now. The court is going to have to say, all right, you each get 50 percent of his, you each get 50 percent of hers, if she gets one. Or a different percentage. Right. Or a deviance from that. But how do you deviate, then, without knowing? I mean, the only fair thing would be, at this point, the 50 percent. If you don't know what hers is. If you don't know what hers is. But – Well, I guess with property, because there is property securities, you could award a different percentage with the understanding that if she's truly vested in X amount, that that could be adjusted later. Yeah. But either way, there has to be a subsequent proceeding, as Justice Goldenhurst described, and as the case law. There will be a forceful proceeding. Then immediately, he would be subject to the 50 percent, because he's already receiving his? He'd have a seat, he'd already be. And she may or may not ever be subject to it. If she continues to work, and maybe he precedes her in death or something along those lines. Correct. Really, we're just asking for it to fall apart. I mean, we're not asking for a new law. I think it's well decided. It's out of this building. It goes our way, so I think it's fair to go with it. Out of this building. We're not asking for anything new. We're just asking for it to fall apart. Thank you, Counsel. Counsel, I know we went over a little bit on your opposing counsel's time, so we'll give you extra time, too, if you like. May it please the Court, Counsel. My name is Janie Visay, and I was with the appellate in Turner Rouse. Just first to get a little bit into the conversation that you were having with Counsel in regards to the offset versus the reserve jurisdiction approach. In this case, I think the misunderstanding that the appellant is having is that it wasn't an offset. It wasn't a simple offset. I can't hear you. Sorry. It wasn't a simple offset of each pension against the other. In both the trial court's supplemental judgment of disillusionment of marriage and the trial court's order on the post-judgment motions, the court explained that in determining that Rachel would receive all interest in her IMRF, that was based upon her failure to provide any documentation regarding the value or the guidelines of the IMRF. And I know that there was a discussion regarding the form that was filled out. Are you saying that was in the nature of a sanction? Not a sanction. In our brief, we cited two case law Supreme Court case and two first district cases in which the courts have established that if parties fail to provide or submit to the court evidence regarding their retirement accounts, their pensions, or their IMRFs, the court is well within its discretion to simply award that retirement account to the party without dividing it between the two of them. But then the court uses that amount in considering the overall property agreement. Well, I believe, so the, with Turner's military pay, I believe the court stated that Rachel would be entitled to, her merit share would be $990 a month when he began receiving distributions on that. What the court looked at was that Rachel did owe, or Rachel was potentially liable for a substantial retroactive child support amount. I believe that was a little bit over $10,500. There was a life insurance policy that the court awarded solely to Rachel. The court also divided the debt in assigning that 85% of it to Turner and 15% of it to Rachel. The court also awarded Rachel a majority of the net assets of the marital estate. And in both its orders, supplemental judgment again in the order of those trial motions, the court did state that it considered the earning potential and capacity of the parties, their ages, their expenses. And at the time of trial, Turner was 59 years old and Rachel was 52. And Turner was earning a lesser salary compared to Rachel, and also in the process of retiring. So it wasn't a simple offset between the two pensions. It was also the entire property award was dependent, or the entire property award was based off of Rachel or Turner retaining the $990. That would have been Rachel's merit share of the pension. And that's why- Wait, wait, wait. So the court awarded $990, but she's not going to get that. Right, right. Not awarding that to Rachel, but I meant. And the court, even in its order, stated that if it were to, in the order of those trial motions, if it were to amend its judgment, then it would also have to amend the property awards and the allegations of marital debt. Because it was so intertwined. Yes, it usually is. Right. In regards to Turner's military pay, whereas Rachel's IMRF, again, pursuant to case law, the court simply awarded that to Rachel because it had no documentation or guidelines regarding it. And I was also not the trial counsel in this case, but I do believe that the $24,000 figure that we were discussing in the form, I think that was pertaining to a different retirement account, in my recollection of the case. I don't believe there was ever any documentation submitted regarding the IMRF. You think there were two IMRFs? No, I think there was a different retirement account, maybe an IRA or something. All right. It seems, though, that when Justice Chapman used the word punishment, that may be a little strong, but it did seem that the court was irritated that Rachel did not produce any information regarding her potential pension. Do you know if the amount of money that you pay in to IMRF is vested automatically? In other words, she could take the entire sum? I mean, something in the back of my mind tells me that you can just buy out. You can take the whole money. You don't have to take it as a pension. In other words, was this a qualified pension plan that she was paying into? Unfortunately, I'm not sure of that. Well, don't you think that's important? If we're talking about pensions, then we're talking about this reserve jurisdiction approach. If it's not a pension, then it seems to me that we're into maybe another field here. Are we assuming for the purposes of this appeal that she had a pension, the amount of which we're not sure about, and that he had a pension, the amount of which we're now sure about, and she was going to get $900 and some odd dollars, but the court reserved that and didn't give it to her? I mean, he allocated it, but for some reason said you're not going to get it. Yes. The court did not award her that $990 because it awarded her other assets in view, in light of the entire debt allocation, marital debt allocation and property. But in response to your question, I think that that touches on the frustration of the trial court. This case was pending for over two years, and in that time period, as Rachel testified to at trial, she received an annual statement, so probably received two or three during these proceedings, and failed to submit or send it to evidence or produce to opposing counsel a copy of any of those statements. And I believe in her testimony, she also stated that the information needed to determine the present-day value of the IMRF or pension was on the statements, but she wasn't aware of it because she hadn't reviewed the statement for that information. Has she vested? Do you know? I don't know. I know that I think it was over 16 years of service that she had put into the IMRF, and all of it was marital. But unfortunately, without the statement, I can't say that. And again, in regards to awarding her the IMRF, which no documentation was provided, the Supreme Court of Illinois has found that where a trial court awards each party their own retirement account based off of the party's failure to offer evidence regarding the retirement account, the court's will within its discretion. In what case are you referring to? I am referring to – I was going to say Smith, but that's not correct. I believe it's Ervin. The Supreme Court case says that if you award each person their pension accounts, then it's okay. Is that Evans? Evans. Sorry, not Ervin. Evans. In remarriage of Evans. Thank you. And yes, the Supreme Court said that the court's trial court's determination is justifiable in that case. And here again, that was a trial court's basis in awarding Rachel the IMRF and all interest in that. Then what the court actually did is kind of exclude both of their pensions from consideration of what the marital estate was. I believe that it did so in regards to Rachel's, which essentially actually advantaged her more than anything because the full amount of that – of those eventual distributions will go to her. But if we don't know what they are, you can't really say that. I mean, I presume, unless you know something that we don't, which you might very well, but we don't know any dime amounts. Right. So I think the court did take the IMRF as a player and awarded that to her since it did have no information on it. And the – again, with Turner's military pay, I think that that was considered in the entire distribution of marital estate and debts. Particularly, again, she did owe – or she was liable for over $10,500 in retroactive child support. There was a life insurance policy in which she was awarded all interest. The debt, a vast majority of that went to Turner, and she was provided the majority of net assets in the estate. So you're saying they considered his military pension in kind of equitably dividing the assets and debts and just then gave her whatever her pension was that we don't know? Yes. And that seems to be discussed in paragraph 27. I mean, he eliminated the child. He considered the child support. I just – I can't figure out how you can do that without knowing something. That's my concern, is the court clearly in 27 explains his rulings for paragraph 25 and 26. I'm just not clear how you do that unless you have a number. I think – and again – And be equitable, I'm saying. Right. And I think, again, speaking – which was brought up earlier, the court's frustration in this matter. This matter had been pending for over two years and did not go to trial until its sixth trial setting. So there were multiple continuances that were requested by Rachel, alleging each time that Turner had not fully complied with discovery compliance. In the last setting before the trial, which I believe was in August, the trial court entered an order which ordered both parties to comply in good faith with all the discovery requests. And I don't remember in detail at this moment exactly what Rachel did not comply with discovery-wise, but I do believe that the IMRF statement was just one of many pieces of her financial documentation that were not produced to opposing counsel prior to trial date. I wonder why opposing counsel didn't then file some kind of motion. If there were these continuances and there was time to do so. I believe that there was never a motion to file, but in speaking to trial counsel, this issue was discussed multiple times with the attorneys and the judge. And again, that's why I believe that the judge did draft the order before the trial the way that he did, compelling both parties to comply. And at the point of the trial date, the petitioner, Turner, and counsel just couldn't keep continuing the case, essentially. Similar to the Supreme Court case, this wasn't a very complex case. It was purely financial, purely made of financial issues that, again, weren't very complicated, but was simply being stalled over the course of two years in six trial settings because discovery was not being, or because on the request of the appellant. So at this point, I think everyone was just ready to get the trial done. And the court, I believe, also felt as though it couldn't keep continuing the case if, over the course of two-plus years, Rachel wasn't going to produce these statements. But these, I mean, these documents could have been obtained by Turner's counsel as well, by dropping a subpoena. I mean, and the other thing is, the $900 per month, how long was the court going to allow that to be paid to Rachel in light of the marriage, the duration of the marriage? Because you're talking about if she only got one year's worth, that's $9,000 a year. And I don't recall. Do you recall how long she was entitled under the formula to receive a distribution? I don't recall. Because that could be some significant money, which is why I assume everybody's here. Right. Well, and prior to trial, Turner did file a position statement over a month, or about a month prior to trial, or the final trial setting, in which he requested that the court award each party their own retirement account. Of course. At that point. Because if he gets all his and she has none, that's a significant amount. Well, and also because there was no documentation ever submitted. I know, but is that really an – I mean, I don't want to argue with you. I'm just questioning in my own mind. Go on. Well, and I do understand what you're saying. There is also case law that states that it is the party's obligation to produce documentation and evidence regarding the value of property, especially contested property. And in this case, it was made known to Rachel that this was going to be a contested issue, given that Turner filed a position statement. I don't believe that Rachel ever did file a position statement. But Turner filed a position statement stating that if, at this point, there was no documentation given regarding her retirement account, that they should each just keep their own. So the burden and the responsibility, I believe, is on – the court also talks about the burden is on Rachel. And if she continues to not supply it, then the court, pursuant to case law, will just award her her retirement account. And then – and again, the Turner's military pay wasn't just a clean set-off between the two. There was – there was an evaluation of the entire distribution, which is why we've also requested in our brief that if this court is to remain this issue back to the trial court, that the court remain – remain to also for redistribution of the marital assets and marital debts. As the trial court also stated in its orders. Or consider – consideration for redistribution. Correct. Yes, sir. You're not arguing that any particular thing needs to be redistributed? If this case were to go back based on the IMRF and the military pay, then I think the entire award and allocation needs to be re-evaluated. Needs to be evaluated for an equitable distribution. Correct. If a remand – if this court decides to remand this case. But if the court decides to remand, how do we deal with the fact that there was no IMRF information? I mean, do we remand when you get the same two years go by and the same problems? I – and I think that that, as case law has stated and as the trial court was frustrated in its orders, if – if the – if the reviewing courts must remand cases on this basis, then parties will benefit from withholding information, getting a second bite at the apple, going back and basically clogging the trial courts and protracting litigation for even longer than this case should have been. And isn't that what the Smith case says? Is that this is what – I mean, to quote them, this is what we see all the time. Yes, ma'am. I mean, that's exactly what the Smith court said, is the parties shouldn't be able to benefit for failure to introduce evidence at trial. On the other hand, I think that Turner's counsel could have obtained the information. If this was the critical issue, I'm not sure that Turner's counsel can just sit on their hands and say, well, we're just waiting. I don't think that's equitable. But what did Turner's counsel do with respect to filed a request for production? Filed a request for production. And the parties – there were interim issues that were being litigated. There were many court appearances. And so many of these issues, even though there were formal pleadings filed, were being discussed with the judge and the attorneys. So I know that this was one of the issues that was being discussed during the interim and dealing with some of the other more minor issues. But, I mean, the court could have ordered her to sign an authorization for the release of the information. That would have been easy. Nobody asked for that. I mean, that we know of. I mean, I recognize you were on trial counsel. But it seems so easy to get it. I mean, it is a very easy document to get. I know that. I mean, I think the court – any of us who have been involved with the IMRF knows that. So I just – I don't know that Turner's not somewhat complicit in this by sitting on his hands. I recognize she's – I mean, she's a lawyer, works in the state's attorney's office. Absolutely no reason she can't get this document. None. Well, she did get the document. She had the document. Yes. She received it. Right. You get an annual – It was just kind of disingenuous that she has no idea what's in this document. Because, I mean, I read the testimony. Right. Right. Was there ever – was there any attempt or discussion or indication of the trial counsel for your client bringing up the idea of 219C, sanctions for failure to comply with discovery? Or did the court, in considering the entirety of this factual arrangement, decide that, according to 219C, there could be some – maybe not sanctions, but a conclusion that this information was under her control and she should suffer the consequences for not divulging it? I don't believe that – Go ahead. I don't believe that trial counsel pursued sanctions or filed any pleadings to that extent. Again, in discussing the easiest possible word, in trying to get this case to trial after, as I said, six settings, the attorney decided that he would just waive his interest in Rachel's IMRF, and that was the position that was taken prior to trial. So at that point, again, Rachel was on notice that if she didn't agree with that, this would be a contested issue, and the only way for the court to rule on it would be for her to actually produce evidence or documentation of the value, the guidelines, any information regarding her IMRF, even just finding out the legal requirement. So you're saying it was her burden. Yes. Thank you, counsel. Counsel, rebuttal. Thank you, Your Honor. I'm going to try to separate the tail from the dog, as they call it here. The dog, in this case, is Turner's pension. Everything else is the tail, okay?  Turner was 60. My client was 52. According to what he said his benefit was, by the time she turns 60, in other words, reaches his current age, he's going to have $180,000-plus in bank already from his pension. He's going to have that as value. I mean, he's got to live, and it's not in the bank. No. So if he lives, the good Lord will it. Preco writes he's going to have $180,000 by the time she reaches his age. But isn't that, doesn't that actually argue that it was obviously a good idea for her to put her benefits in, her projected benefits or vested benefits, which, by the way, we all know there is a document that tells what your vested benefit is for IMRF at such and such a date, and if you work to such and such a date or reach 55, she wouldn't even concede that. She said, I don't know if I'm eligible at 55, or if you work then to another age of 62. It's all in there. I think it is. Okay. Wasn't it then her responsibility to apprise the court of that, so the court could consider her potential benefit versus his known benefit? Well, now that I have 20-20 hindsight, I wish it wasn't, because it would prove that it's totally worth it. It would show that until we know when she's going to retire, what her final salary is, we've got nothing. I wish it was there. It makes it even cleaner for me. I could walk right over it then, but no, that was a flight. You didn't produce that piece of worthless paper? Well, good. You walk right over it. Well, it was worthless. It was worthless. She didn't bring it because it was worthless. None of his discovery requests if he had any are on the record. I mean, on this record, we have to assume, speculate, that he even asked for discovery. I mean, there's some comments about it, but it's not there. What did he ask for? What did he ask for? Can anybody tell me what he asked for in discovery? It's not there. I heard that we didn't have a position statement. Not true. I forwarded it in a brief. It starts at page C262. That's our position statement. Sanctions as such, Your Honor, not mentioned in any way. Not mentioned in this record. What did you say? Sanctions regarding discovery not mentioned in this record. Well, Rachel filed their sanctions. Well, she asked. Well. Rachel was filing. This is what's so confusing to me. Rachel was filing motions to compel against him and for sanctions. Right. And yet, nothing the other way. No. At least that we know about. The other direction, no. No, I did not mean to imply that there were sanctions imposed. I just said it appears to look like a type of sanctions. Well, legal, yes, and a lot. But I was more referring to the question of Justice Gordon Hirsch as to whether there was any discussion between the two sections. Oh. Sorry. Mr. Blogg, on page 15 of your brief, opening brief, you say that Rachel's financial statement filed just before trial stated that the current value of her IMRF retirement was $26,952.23. Right. So we keep talking. We've been talking here for 20 minutes already about no evidence of current value. And yet, that's where my number came from. So what is it? Well, do we have? That's the financial statement that the litigants have to fill out. I understand, but it has a current value of her IMRF retirement. So there was a current value. There should be a space report notes on that page, but there isn't. I don't know. I mean, wait, this is your brief. It is. That's what the record says. I mean, that's the financial statement. That number's on that page. It's all I have. Well, that's a bit disingenuous of you if you say you put something in a brief and you don't know where it comes from or what it means. Well, that's what I do. I came to respond to Exhibit Z. I mean, it's there. But where did the number come from? How did the number come from? Well, I mean, these are required to be filed before the court. Aren't they verified? By cross-examination. Well, at least in the record in Exhibit Z, there is some indication of what her IMRF retirement current value was. Current value. In quotes. Thank you, counsel. Thank you. Well, we appreciate the briefs and arguments of counsel. We'll take the case under advisement. The court will be in a five-minute recess, and then we will resume oral argument. Chair Joe Eng versus Town and Country Center. All rise.